UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SALIMEH N., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-1523-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1976, graduated from high school in Iran, and has not worked since moving to the United States in 2017. AR 219, 238. In March 2019, Plaintiff applied for benefits, alleging disability as of January 1, 2017. AR 189-98. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR 131-34, 136-39. After the ALJ conducted a hearing in March 2021 (AR 31-58), the ALJ issued a decision finding Plaintiff not disabled. AR 9-18.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**: Plaintiff has the following severe impairments: lumbar and cervical degenerative disc disease, right knee condition, left shoulder condition, migraine headaches, obesity, and depressive disorder.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**: Plaintiff can perform light work with additional limitations: she can lift/carry 10 pounds frequently and 20 pounds occasionally. She can sit for six hours in an eight-hour day, and stand/walk for a total of four hours in an eight-hour day. She can occasionally climb ramps or stairs. She cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, and crouch, but can never crawl. She must avoid concentrated exposure to extreme cold; extreme heat; wetness; humidity; excessive vibration; pulmonary irritants, such as fumes and gases; and workplace hazards, such as dangerous machinery and unprotected heights. She can understand and perform simple, routine tasks and tasks in a routine work environment with simple work-related decisions. She can have occasional, superficial interaction with co-workers and the public. She can understand and follow goals set by the employer. She cannot supervise other employees, and cannot engage in team problem-solving work. She can carry out multi-step tasks and can maintain concentration, persistence, and pace for up to two hours continuously. She can maintain adequate attendance for a normal workweek.

**Step four**: Plaintiff has no past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 9-18.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-5. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 4.

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to reference her lack of ability to communicate in English in the RFC assessment or vocational expert (VE) hypothetical, (2) discounting her subjective allegations, and (3) discounting certain medical opinions. The

1  Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial
2  evidence, and should be affirmed.

3        A.      **The ALJ Erred in Discounting Plaintiff's Testimony**

4        The ALJ summarized Plaintiff's allegations and explained that she discounted them
5  because (1) the objective medical evidence failed to corroborate Plaintiff's allegations of
6  disabling physical or mental limitations; (2) Plaintiff's back pain and shoulder pain was treated
7  conservatively; (3) Plaintiff claimed to experience migraine headaches causing light sensitivity,
8  dizziness, and blurred vision 25 days per month, but her treatment notes did not corroborate
9  these symptoms at that frequency; (4) Plaintiff reported mental symptoms related to situational
10 stressors (not receiving a green card on time or a stimulus check, feeling lonely in the United
11 States and strained relationships with family in Iran, housing issues), rather than ongoing
12 vocational limitation; and (5) Plaintiff's activities (such as using public transportation, shopping
13 in stores, maintaining friendships, attending church, completing light household chores,
14 attending weekly ESL classes) are inconsistent with the physical, cognitive, and social
15 limitations Plaintiff alleged.  AR 14-16.  Plaintiff argues that these reasons are not clear and
16 convincing, as required in the Ninth Circuit.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th
17 Cir. 2014).

18       At the outset, the Court notes that the ALJ findings do not specifically assess Plaintiff's
19 knee-related allegations.  The ALJ acknowledges that Plaintiff has a right knee meniscus tear and
20 alleges experiencing knee pain, and that she had to stop treatment for her knee pain due to the
21 pandemic, but does not go on to explain why Plaintiff's allegations of disabling knee pain were
22 not credited.  AR 15-16.  None of the ALJ's findings relating to Plaintiff's other physical
23 allegations pertain to her knee allegations.  *Id*.  Thus, the ALJ erred in failing to explain why she

did not account for Plaintiff's knee allegations in crafting the RFC assessment. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Other portions of the ALJ's reasoning are also erroneous. For example, the ALJ found that Plaintiff's allegations of disabling back and shoulder pain were undermined by her course of conservative treatment in the form of medication and physical therapy, but, as noted by Plaintiff, the ALJ failed to acknowledge that Plaintiff also underwent steroid injections. *See* Dkt. 10 at 7-8. Furthermore, the conservative treatment proved ineffective in resolving her symptoms (*e.g.*, 385, 387-89, 391-92, 394, 567, 571-72, 576-77, 587-88, 591, 634, 790, 801, 1216, 1230, 1253-54), and Plaintiff's providers were contemplating surgery for her shoulder after trying conservative options. *See, e.g.*, AR 951-52, 973. Thus, the ALJ's description of Plaintiff's course of treatment does not accurately reflect the record nor does Plaintiff's treatment constitute a clear and convincing reason to discount her allegations.

Even if the ALJ properly discounted Plaintiff's migraine and mental allegations as inconsistent with the record, as argued by the Commissioner (Dkt. 16 at 5-6), these reasons do not cure the ALJ's errors related to Plaintiff's knee, back, and shoulder allegations. The ALJ referenced Plaintiff's ability to complete various household chores, but Plaintiff's description of these activities does not contradict her alleged physical limitations. AR 16, 240-45. Because the ALJ failed to provide a clear and convincing reason to discount Plaintiff's knee, back, and shoulder allegations, this case must be remanded for the ALJ's reconsideration of those allegations.

### B. The ALJ Erred in Discounting Medical Opinion Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).

Plaintiff challenges the ALJ's assessment of two form opinions regarding her physical functioning, completed by treating physicians Cindy Lin, M.D., and Kushal Dhesi, M.D. AR 317-19, 366-69. The ALJ described Drs. Lin and Dhesi as examining physicians (AR 16), but these providers in fact treated Plaintiff for years. *See* AR 330-34, 380-92, 602-52, 789-92, 807-09. The ALJ found that the form opinions completed by Drs. Lin and Dhesi were unsupported because the doctors did not perform examinations with objective findings (AR 16), but the ALJ did not reference the providers' treatment notes that describe many examinations. Their notes reference objective findings at least arguably consistent with their conclusions, particularly as to Plaintiff's standing and walking limitations. *See, e.g.*, AR 333 (Dr. Lin describing Plaintiff's slow gait with decreased step length), 384 (Dr. Dhesi noting Plaintiff's decreased sensation), 391 (Dr. Dhesi noting Plaintiff's decreased sensation and positive straight leg raise on the right), 612 (Dr. Lin noting Plaintiff's slow gait with decreased step length), 619 (same), 626 (Dr. Lin noting slow gait with decreased step length, slightly antalgic on right), 636 (same), 643 (Dr. Lin noting Plaintiff's antalgic gait on right), 653 (Dr. Lin noting Plaintiff's antalgic gait), 791 (Dr. Lin noting slow gait with decreased step length, antalgic on right), 809 (same). Because the ALJ apparently failed to consider the treatment notes of Drs. Lin and Dhesi when evaluating their opinions, the ALJ's supportability finding is incomplete.

The ALJ's consistency assessment of the opinions is incomplete as well. The ALJ found that the opinions of Drs. Lin and Dhesi were inconsistent with the record and did not reflect a comprehensive view of the record, unlike the State agency opinions. AR 16. But the treatment notes of Drs. Lin and Dhesi themselves constitute a major part of the record, and the doctors were aware of their ongoing treatment of Plaintiff when completing the form opinions. Accordingly, again, the Court finds that because the ALJ apparently failed to consider the opinions of Drs. Lin and Dhesi in the context of the doctors' longitudinal treatment notes, the ALJ's consistency finding is inaccurate and incomplete.

On remand, the ALJ shall reconsider the opinions of Drs. Lin and Dhesi in light of their treatment records.

### C. The ALJ Did Not Err at Step Five Regarding Plaintiff's Lack of Ability to Communicate in English

The ALJ found that Plaintiff can communicate in her native language of Farsi, but not in English. AR 14. The ALJ did not include a communication limitation in the RFC assessment or in the VE hypothetical, however, and Plaintiff argues that the ALJ thus erred at step five, citing 20 C.F.R. § 416.964. Dkt. 10 at 5. The Commissioner contends that Plaintiff's argument relies on an outdated version of 20 C.F.R. § 416.964, and that the ALJ's decision complies with the applicable version of that regulation. Dkt. 16 at 2 (citing 20 C.F.R. § 416.964). On reply, Plaintiff acknowledges the updated version of 20 C.F.R. § 416.964, but contends that the ability to communicate in English nonetheless remains a relevant vocational factor as evidenced by the language component of the Dictionary of Occupational Titles ("DOT"), which suggests that language proficiency affects job placement. Dkt. 17 at 2.

The prior version of 20 C.F.R. § 416.964 provided that at step five, when evaluating and describing a claimant's educational level, the Commissioner should consider, *inter alia*, the

claimant's ability to communicate in English, but the current version of the regulation omits this factor from consideration.  *Compare* 20 C.F.R. § 416.964 (version in effect on Feb. 25, 2020) *with* 20 C.F.R. § 416.964 (as amended); *available at* https://www.ecfr.gov/compare/current/to/2020-02-25/title-20/chapter-III/part-416/subpart-I/subject-group-ECFR16863d8d81c8146/section-416.964 (last visited Jun. 2, 2022).  When finalizing the regulation amendment, the Social Security Administration explained that changes in the national economy indicate that employment rates for people with limited English proficiency have increased since 1980, which suggests that English proficiency is no longer a useful category describing a claimant's "educational attainment or of the vocational impact of an individual's education for the purposes of our programs," as it was in 1978, when the former regulation was written.  *See Removing Inability to Communicate in English as an Education Category*, 85 Fed. Reg. 10,586-01, 10,587, *available at* 2020 WL 885690 (Feb. 25, 2020).

      The agency's explanation for the regulation amendment also directly responds to Plaintiff's concern that any VE would testify that language proficiency affects job placement, as reflected in the DOT's use of a language component as part of a job definition.  *See* 85 FR 10586-01, 10,591.  According to the agency, the fact that the DOT includes a language component is not dispositive, because the DOT has always included this component and yet even under the prior rules, the inability to communicate in English "has no impact on disability determinations for claimants under age 45."  *Id*.  Furthermore, the agency does not dispute that language proficiency may affect job placement, but that because the data shows that more jobs are now available for people with limited English proficiency, the agency finds that English proficiency is no longer as influential a category as it once was.  *Id*.

Plaintiff has not challenged the agency's ability to amend its regulations or its interpretation thereof, and, moreover, has not shown that the ALJ's decision fails to comply with the regulations applicable at the time of the decision.  Furthermore, Plaintiff has cited no authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a VE hypothetical under the current regulatory scheme.  Recent agency guidance suggests that such a consideration would be inappropriate.  *See* Social Security Ruling 20-1p, *available at* 2020 WL 1285114 (Mar. 9 2020) ("When determining the appropriate education category, we will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency.").  Accordingly, Plaintiff has not shown that the ALJ's decision contains reversible error in failing to explicitly discuss Plaintiff's lack of ability to communicate in English at step five.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's knee, back, and shoulder allegations and reconsider the opinions of Drs. Lin and Dhesi, and reconsider any other findings as necessary in light of the updated record.

Dated this 6th day of June, 2022.

S. KATE VAUGHAN
United States Magistrate Judge